**Edwin A. QUINN and William Carey Pinkard d/b/a The Parish Company, Plaintiffs,**

v.

**REED UNIT-FANS, INC., Defendant.**

**Civ. A. No. 8021. Division D.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 30, 1962.

Lloyd Adams, Thomas Barr, III, New Orleans, La., for plaintiffs.

H. L. Hammett, New Orleans, La., for defendant.

AINSWORTH, District Judge.

This is a patent infringement suit.[1] The plaintiffs, Edwin A. Quinn and William Carey Pinkard, were issued United States Letters Patent No. 2,817,733 on December 24, 1957, for an invention in a safety switch.[2] The plaintiffs contend that the defendant, Reed Unit-Fans, Inc., infringed their patent by making, selling and using a safety switch embodying the patented invention. The defendant denies the infringement and counterclaims.

Judgment for the defendant is now entered for the following reasons:

The electrical safety switch around which this suit centers is a mechanical device incorporating a spring-loaded switch held in a closed or *on* position by a fusible link. The spring-loaded switch is opened (moved from *on* position to *off* position) when the fusible link melts at

---

1. 28 U.S.C. § 1400 is the basis of this court's jurisdiction.

2. The patent was actually issued to the plaintiff Quinn and Kathryn Beyer Pinkard who transferred her interest to her husband, co-plaintiff William Carey Pinkard, on May 2, 1957.

a predetermined temperature. This device is used as a safety measure in attic fan installations. In the event of a fire on the premises the fan, by the operation of the safety switch, is turned off.

Evidence was introduced in the form of oral testimony and circulars which established that this principle had been previously patented by Phillips and others.[3] The plaintiffs do not have, nor do they claim, any invention in the use of a spring-loaded switch or a fusible link. Plaintiff Quinn contends that he improved the switch of defendant, which had been in use for many years.

The patent office at first refused to issue the plaintiffs a patent because of close similarity to the Phillips Patent No. 2,085,386, dated June 29, 1937, and the Gardenhour Patent No. 2,354,111 dated July 18, 1944. Plaintiffs amended their claims so as to provide for an L-shaped bracket (patent claims 1 and 2) and an external spring (patent claim 2).[4]

■ Although a patent is prima facie valid and the burden of establishing its invalidity rests upon the defendant, 35 U.S.C. § 282, the protection furnished by a patent is limited by the claims on which it was granted, 69 C.J.S. Patents § 204, p. 680: accord, Houston Engineers, Inc. v. Bowen-Itco, Inc. and Lynn W.

Storm, 5 Cir., 1962, 310 F.2d 522. The effect of a rejection by the patent office and the applicant subsequently amending his claims is to limit the patent to the amended claims. 2 Deller, Walker on Patent, 1217, § 249 (3d Ed. 1937), and numerous cases cited therein and in cumulative supplement thereto (Supp. 1961). "The limitations on the claims must be strictly construed against the patentee, and must be regarded as disclaimers." 69 C.J.S. § 212, pp. 722–723.

■ Since the plaintiffs' patent is limited by claims 1 and 2, as amended, which claims specify an L-shaped bracket and an external spring, and since the defendant's device utilizes neither an L-shaped bracket nor an external spring, there is no infringement of plaintiffs' Patent No. 2,817,733, dated December 24, 1957, by the defendant here. In fact, the device actually manufactured and sold by the plaintiffs does not utilize either an L-shaped bracket or an external spring. Substantially identical devices have been manufactured and sold by the defendant and other firms for many years prior to the plaintiffs' patent.[5]

The defendant's counterclaim for damages is denied for the reason that the defendant did not show monetary damages caused by actions of the plaintiffs.

Judgment will be entered accordingly.

3. Storrs, No. 533,183 dated January 29, 1895; Weathers, No. 1,172,852 dated February 22, 1916; Piper, No. 1,774,995 dated September 2, 1930; Bamonte, No. 2,058,288 dated October 20, 1936; Gardenhour, No. 2,354,111 dated July 18, 1944; Sloan, No. 2,775,669 dated December 25, 1956; Barnes, No. 2,796,494 dated June 18, 1957.

4. Applicant's first amendment:
"Various types of alarm devices including fusible elements have been provided, however, the device of this application is unique in that it includes a conventional circuit switch mounted in a conventional outlet box *with the box carried by an L-shaped bracket that is adapted to be attached by a screw or by screws to roof rafters, window frames, walls or* other parts of buildings * * *" (Emphasis supplied.)

5. See testimony and exhibits re: Phillips, Bar-Brook, Chelsea and Stewart switches.